**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **DAMIAN MENDEZ,** <br> **JOSE ANTONIO MARTINEZ JIMENEZ** <br>   On behalf of himself and <br>   other similarly-situated persons, <br><br>   Plaintiffs, <br> v. <br><br> **BOB'S DISCOUNT FURNITURE, LLC,** <br> **NEHDS LOGISTICS LLC,** <br> **ABC CORPS., and JANE & JOHN DOES,** <br><br>   Defendants. | CIVIL ACTION <br><br> Case No. <br><br><br><br><br><br><br> **CLASS ACTION COMPLAINT** <br> **AND JURY TRIAL DEMAND** |

**PLAINTIFFS' CLASS ACTION COMPLAINT**

1.   NOW COME the Plaintiffs, DAMIAN MENDEZ and JOSE ANTONIO MARTINEZ JIMENEZ, by and through their attorneys at Grady & Riley, LLP, on behalf of themselves and all other similarly-situated persons, brings this class action lawsuit against Defendants Bob's Discount Furniture, LLC, NEHDS Logistics, LLC, ABC Corps. and Jane and John Does, to recover damages under the **Fair Labor Standards Act (29 U.S.C. § 216),** the **Connecticut Wage and Hour Act (Conn. Gen. Stat. § 31-58, et seq.) ("the WHA")** and the doctrine of unjust enrichment.

**JURISDICTION AND VENUE**

2.   Jurisdiction is also proper pursuant to 28 U.S.C. § 1331 because this action arises under the Class Action Fairness Act ("CAFA").  See 28 U.S.C. § 1332(d).

3.   This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

4.   Venue is proper under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.  Plaintiffs arrived for work at the same NEHDS Logistics, LLC headquarters in Monroe, Connecticut[1] every day, made a substantial number of deliveries within Connecticut, and returned to the same Monroe, Connecticut location[2] every night after completing deliveries.

---

[1] Or prior to the NEHDS relocation to Monroe, Connecticut, to the previous NEHDS headquarters in Bethel, Connecticut.

[2] See footnote No. 1

5.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 & 2202.

## THE PARTIES

6.     Plaintiff Damian Mendez is a resident of Danbury, Connecticut.

7.     Plaintiff JOSE ANTONIO MARTINEZ JIMENEZ is a resident of Danbury, Connecticut.

8.     Defendant Bob's Discount Furniture, LLC ("Bob's") is a limited liability company organized and existing under the laws of the Commonwealth of Massachusetts with with a principal executive office at 517 117th Street, Bronx, New York 10035.

9.     Defendant Bob's is in the business of selling furniture to customers and operates stores and locations in the Northeastern and Mid-Atlantic regions of the United States.

10.    Upon information and belief, Defendant Bob's is authorized to do business under the laws of the State of Connecticut.

11.    Deliverymen and deliverywomen (hereinafter, "deliverymen") delivered Bob's furniture to Bob's customers, wearing Bob's apparel and sometimes using Bob's trucks.

12.    Defendant Bob's was at all relevant times herein, an employer of Plaintiffs and certain other similarly situated employees, as defined by the FLSA and the WHA.

13.    Defendant NEHDS Logistics, LLC ("NEHDS") is a Connecticut delivery company that maintains and operates a headquarters at 448 Pepper Street, Monroe, Connecticut 06468 and prior to its 2019 relocation, at 6B Research Dr, Bethel, CT 06801 before said headquarters was relocated to Monroe.

14.    Defendant NEHDS is a provider of delivery and logistics services for companies such as Bob's.

15.    Defendant NEHDS was at all relevant times herein, an employer of Plaintiffs and certain other similarly situated employees, as defined by the FLSA and the WHA.

16.    Defendants ABC CORPS. and/or JANE and JOHN DOES are joint employers of the remaining other similarly situated employees, as defined by the FLSA and WHA, which entered into agreements to provide deliverymen for or with Defendants Bob's and NEHDS.

17.     The Class of similarly situated Plaintiffs is defined as:

> ***All individuals that delivered Bob's Discount Furniture products who were based out of the Monroe, Connecticut headquarters of NEHDS Logistics, LLC (or the Bethel, Connecticut headquarters prior to its relocation to Monroe) who performed said duties at any time June 2017 to the present***.

> Plaintiffs reserve the right to amend the putative class definition if necessary

18.     Upon information and belief, Bob's is, at present and has been at all times relevant to the allegation in the complaint, an enterprise engaged in interstate commerce within the meaning of the FLSA in that the entity:

(a)     has had employees engaged in commerce or in the production of goods for commerce, and handle, sell or otherwise work on goods or material that have been moved in or produced for commerce by any person; and

(b)     has had an annual gross volume of sales of not less than $500,000.00.

19.     Upon information and belief, NEHDS is, at present and has been at all times relevant to the allegation in the complaint, an enterprise engaged in interstate commerce within the meaning of the FLSA in that the entity:

(a)     has had employees engaged in commerce or in the production of goods for commerce, and handle, sell or otherwise work on goods or material that have been moved in or produced for commerce by any person; and

(b)     has had an annual gross volume of sales of not less than $500,000.00.

20.     At all times relevant to this action, Defendants were and are enterprises as defined in Sec. 3(r) of the FLSA, 29 U.S.C. § 203(r).

21.     At all times relevant to this action, Defendants were Plaintiffs' employers as defined by 29 U.S.C. § 203(d) and Conn. Gen. Stat. § 31-275(10), and Defendants jointly employed Plaintiffs.

22.     Defendant NEHDS Logistics, LLC maintained a warehouse at 448 Pepper Street, Monroe, Connecticut 06468[3] which stored its own vehicles, vehicles belonging to BOB'S DISCOUNT FURNITURE, LLC, and vehicles belonging to ABC CORPS. and/or JANE and JOHN DOES, all of which were used interchangeably to deliver BOB'S DISCOUNT FURNITURE, LLC products by furniture deliverymen who were jointly employed by all Defendants.

---

[3] And at 6B Research Dr, Bethel, CT 06801 before said headquarters was relocated to Monroe.

## **SPECIFIC ALLEGATIONS**

23.     Plaintiff DAMIAN MENDEZ was employed as a furniture deliveryman, while performing other miscellaneous tasks, by the Defendants from about October 2019 to about March 2020.

24.     Plaintiff DAMIAN MENDEZ worked approximately seventy (70) hours or more per week for Defendants from about October 2019 to about March 2020.

25.     Plaintiff DAMIAN MENDEZ was paid by Defendants approximately $140.00 per day from about October 2019 to about March 2020.

26.     Defendants failed to pay Plaintiff DAMIAN MENDEZ the legally prescribed minimum wage for his hours worked from in or around October 2019 to about March 2020, a violation of the minimum wage provisions contained in the FLSA and the WHA.

27.     Although Plaintiff DAMIAN MENDEZ worked approximately seventy (70) hours or more per week during his employment for Defendants, Defendants did not pay Plaintiff time and a half (1.5 times) his regular hourly wage for hours worked over forty (40) hours, a violation of the overtime provisions contained in the FLSA and the WHA.

28.     Plaintiff JOSE ANTONIO MARTINEZ JIMENEZ was employed by the Defendants continuously for over 4 years, commencing employment prior to June 2017 until the conclusion of his employment in March 2020.

29.     Plaintiff JOSE ANTONIO MARTINEZ JIMENEZ worked approximately seventy (70) hours or more per week for Defendants beginning prior to June 2017 to about March 2020.

30.     Plaintiff JOSE ANTONIO MARTINEZ JIMENEZ was paid by Defendants approximately $140.00 per day beginning prior to June 2017 to about March 2020.

31.     Defendants failed to pay Plaintiff JOSE ANTONIO MARTINEZ JIMENEZ the legally prescribed minimum wage for his hours worked from in or around June 2017 to about March 2020, a violation of the minimum wage provisions contained in the FLSA and the WHA.

32.     Although Plaintiff JOSE ANTONIO MARTINEZ JIMENEZ worked approximately seventy (70) hours or more per week during his employment for Defendants, Defendants did not pay Plaintiff time and a half (1.5 times) his regular hourly wage for hours worked over forty (40) hours, a violation of the overtime provisions contained in the FLSA and the WHA.

33.     Defendants also improperly shifted expenses onto the Plaintiffs by requiring Plaintiffs to pay for uniforms to be worn while making deliveries.  The uniforms were sold from an in-house store at the NEHDS facility in Monroe, Connecticut[4] where the deliverymen reported every morning.

---

[4] See footnote 3

34.     Defendants also improperly shifted expenses onto the Plaintiffs by requiring Plaintiffs to pay the cost for any furniture damaged during the course of deliveries.

35.     Upon information and belief, Defendants willfully failed to post notices of the minimum wage and overtime wage requirements in a conspicuous place at the
location of their employment as required by both the FLSA and WHA.

## GENERAL ALLEGATIONS

36.     Plaintiffs and all Class Members were assigned to perform non-exempt tasks as deliverymen for Bob's and were based out of the NEHDS Facility in Monroe, Connecticut, or prior to its 2019 relocation, in Bethel, Connecticut.

37.     Bob's entered into business relationships with other entities, including NEHDS, ABC Corps., and John and Jane Does, in order to conceal the fact that it had an employer-employee relationship with Plaintiffs and all Class Members.

38.     Bob's has had and continues to have a physical presence at the NEHDS facility in Monroe, Connecticut, and prior to its 2019 relocation, in Bethel, Connecticut, including but not limited to the storage of its trucks at said facility.

39.     Bob's controlled the manner and means in which Plaintiffs and all Class Members performed their duties. Specifically, Plaintiffs and all Class Members received their delivery schedules and instruction from Bob's, communicated with Bob's employees while delivering furniture during the workday, and handled paperwork and invoices with Bob's customers, and were required to wear a Bob's embroidered uniform when making deliveries to Bob's customers. Bob's had the authority to reprimand and terminate Plaintiffs and all Class Members.  As such, Bob's was an employer of Plaintiffs and all other Class Members under the FLSA and the WHA.

40.     NEHDS is a delivery and logistics company who controlled the manner and the means in which Plaintiffs and all Class Members performed their duties.  Specifically, Plaintiffs and all Class Members were expected to report to work every morning at the NEHDS facility in Monroe, Connecticut[5], at or about 6:00AM without being specifically asked, took instruction from Bob's and/or NEHDS employees, communicated with Bob's and NEHDS employees while delivering their routes during the workday, and handled paperwork related to or pertaining to Bob's and/or NEHDS.  NEHDS had the authority to reprimand and terminate Plaintiffs and all Class Members.  As such, NEHDS was an employer of Plaintiffs and all other Class Members under the FLSA and the WHA.

41.     NEHDS entered into business relationships with other entities, including Bob's, ABC Corps., and John and Jane Does, in order to conceal the fact that it had an employer-employee relationship with Plaintiffs and all Class Members

---

[5] Id.

42. John and Jane Does and./or ABC Corps. entered into agreements with Bob's and/or NEHDS to provide deliverymen to work out of the NEHDS facility delivering Bob's furniture.

43. John and Jane Does and/or ABC Corps. are employers under the FLSA and WHA because they controlled aspects of the employment of Plaintiffs and all other Class Members.

44. Plaintiffs and all Class Members delivered Bob's furniture from the NEHDS Facility to Bob's customers.

45. Plaintiffs and Class Members are not independent contractors as defined by Conn. Gen. Stat. §31-222 (a.k.a. "the ABC Test").

46. In fact, as to the "A" part of Connecticut's ABC independent contractor test, Defendant does not allow Plaintiffs and Class Members to be free from control in the manner in which they perform their work. Defendant imposes significant control over Plaintiffs and Class Members. This control includes some if not all of the following requirements:

   (a) Defendants requires Plaintiffs and the class to load and unload their trucks at the NEHDS headquarters in Monroe, Connecticut (or prior to the 2019 relocation, in Bethel, Connecticut);

   (b) Defendants require Plaintiffs and Class Members to report to the facility by 6 a.m., five days a week, to check in, obtain instructions for the day including possible last-minute additions to their deliveries;

   (c) Defendants requires Plaintiffs and Class Members to make all daily deliveries before returning to NEHDS headquarters, regardless of how long completing said schedule takes;

   (d) Defendants requires Plaintiffs and Class Members', to follow specific instructions as to whom deliveries must be made, the order in which deliveries are to be made, and locations where deliveries to be made.

   (e) Defendants also adds additional deliveries that were not originally scheduled for the day to Plaintiffs and Class Members' routes and they are not allowed to postpone those deliveries for another day or to turn them down.

   (f) Defendants require Plaintiffs and Class Members to wear uniforms when making deliveries.

   (g) Defendants require Plaintiffs and Class Members to be "courteous and well groomed."

   (h) Plaintiffs and Class Members are "obligated to wear approved picture identification and approved apparel at all times while performing Services."

  (i)  Defendants requires Plaintiffs and Class Members, to carry a cell phone so that they may receive calls from Defendants.  Defendants contact Plaintiffs during the day with instructions related to cancellations and rescheduling of deliveries.

  (j)  Defendants require Plaintiffs and Class Members to acquire and/or carry with them computer tablets with applications or software to track Plaintiffs and the merchandise being delivered.

  (k)  Defendants require Plaintiffs and Class Members to be in contact with Defendants clients regarding the status of deliveries.

  (l)  Defendants require Plaintiffs and Class Members to obtain signatures from customers when deliveries are made.

47. As for the "B" part of Connecticut's ABC test, Defendant requires Plaintiffs and Class Members to perform work which is in the usual course of business of Defendant - i.e., they perform delivery services and Defendant is engaged in the business of providing delivery services to its customers. Further, the work performed by Plaintiffs and Class Members is not performed outside of all the places of business of the enterprise for which the service is performed. Instead, Defendant requires that Plaintiffs and the class members be at Defendant's facility in the morning and evening for 30-90 minutes each time to load, unload, receive merchandise and instructions and for other reasons.

48. Finally, as to the "C" part of Connecticut's ABC independent contractor test, Defendants do not permit Plaintiffs and Class Members to be customarily engaged in an independently established trade occupation, profession, or business of the same nature as that involved in the service performed.  The Plaintiffs and Class Members use trucks provided by the Defendants, owned by the Defendants, picked up in the morning at a facility owned by the Defendants and/or where Defendants have a physical presence, and returned to that same facility at night.  Simply put, Plaintiffs and Class Members are Defendants' employees.

49. Plaintiffs and Class Members are not exempt under the FLSA.

50. Plaintiffs and Class Members are not exempt under the WHA.

51. Plaintiffs and Class Members routinely worked far in excess of forty (40) hours per week for Defendants and were not paid 1.5 times their hourly rate when they worked over forty (40) hours per week.

52. Defendants' ongoing illegal policies of failing to pay Plaintiffs and Class Members for time worked has resulted in Class Members being denied substantial legally required compensation and/or overtime payments given that Plaintiffs and Class Members routinely worked in excess of forty (40) hours per week.

53. In addition, the payments earned by Plaintiffs and all other Class Members are reduced to account for various deductions, charges and/or expenses that do not benefit Plaintiff or other

Class Members.  For example, Plaintiffs, like other Class Members, was subjected to deductions, charges and/or expenses to cover, inter alia, the cost of various performance-based penalties.

## **COLLECTIVE ACTION ALLEGATIONS**

54.     Plaintiffs bring this action on behalf of themselves and other employees similarly situated as authorized under the FLSA, 29 U.S.C. § 216(b). The employees similarly situated are:

55.     Collective Class: All persons who are or have been employed by the Defendants as furniture deliverymen, or other similarly titled personnel with substantially similar job requirements and pay provisions, who were performing the same sort of functions for Defendants, other than the executive and management positions, who have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay required minimum and overtime wage compensation.

56.     Upon information and belief, Defendants employed over 100 employees within the past three years subjected to similar payment structures.

57.     Upon information and belief, Defendants suffered and permitted Plaintiffs and the Collective Class to work more than forty hours per week without appropriate overtime compensation.

58.     Upon information and belief, Defendants suffered and permitted Plaintiffs and the Collective Class to work without proper minimum wage compensation.

59.     Defendants' unlawful conduct has been widespread, repeated, and consistent.

60.     Upon information and belief, Defendant had knowledge that Plaintiffs and the Collective Class performed work requiring overtime pay and that Plaintiffs were paid below the applicable minimum wage.

61.     Defendants' conduct as set forth in this Complaint, was willful and in bad faith, and has caused significant damages to Plaintiffs and the Collective Class.

62.     Defendants are liable under the FLSA for failing to properly compensate Plaintiffs and the Collective Class, and as such, notice should be sent to the Collective Class. There are numerous similarly situated current and former employees of Defendants who have been denied overtime pay and/or proper minimum wage in violation of the FLSA and WHA, who would benefit from the issuance of a Court-supervised notice of the present lawsuit, and the opportunity to join the present lawsuit.  Those similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

63. The questions of law and fact common to the putative class predominate over any questions affecting only individual members.

64. The claims of Plaintiffs are typical of the claims of the putative class.

65. Plaintiffs and their counsel will fairly and adequately protect the interests of the putative class.

66. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy.

## FEDERAL RULE OF CIVIL PROCEDURE RULE 23 CLASS ALLEGATIONS

67. Plaintiffs sue on their own behalves and as the class representatives (hereinafter referred to as the "Connecticut Class Representatives") and bring **COUNT III and COUNT IV** on their own behalves and as a class action, on behalf of those similarly situated, pursuant to Fed. R. Civ. P. 23(a) and (b). The Fed. R. Civ. P. 23 Class is defined as:

> **All furniture deliverymen (or deliverywomen) who are Connecticut residents who currently or have been employed and/or jointly employed by the Defendants and who worked greater than 40 hours per week (hereinafter referred to as the "Connecticut Class") without receiving time and a half for hours over 40 each week and/or received an hourly rate below minimum wage at any time during the 3 years prior to the filing of the Complaint.**

> Plaintiffs reserve the right to amend the putative class definition if necessary.

68. The persons in the Connecticut Class are so numerous that joinder of all members is impracticable. Although, the precise number of such persons is unknown, and facts upon which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are more than 100 members of the Connecticut Class.

69. There are questions of law and fact common to the Connecticut Class that predominate over any questions solely affecting individual members of the Connecticut Class, including but not limited to:

> (a) Whether Defendants unlawfully failed to pay overtime compensation in violation of and within the meaning of the WHA

> (b) Whether the Connecticut Class Representatives and Connecticut Class are nonexempt from entitlement to overtime and minimum wage compensation for hours worked under the pay requirement of the WHA;

> (c) Whether Defendants failed to keep accurate and complete time records for all hours worked by the Connecticut Class Representatives and the Connecticut Class;

  (d)  Whether Defendants' policy of failing to pay workers was instituted willfully or with reckless disregard of the law;

  (e)  The proper measure of damages sustained by the Connecticut Class Representatives and the Connecticut Class; and

  (f)  Whether Defendants should be enjoined from such violations in the future.

70. The Connecticut Class Representatives will fairly and adequately protect the interests of the Connecticut Class and have no interests antagonistic to the class. The Plaintiffs are represented by attorneys who are experienced and competent in both class litigation and employment litigation.

71. A class is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant. The damages sustained by individual class members are modest compared to the expense and burden of individual prosecution of this litigation. Class action treatment will obviate unduly duplicative litigation and the possibility of inconsistent judgments.

72. Further, the Connecticut Class Representative and the Connecticut Class have been equally affected by Defendants' failure to pay overtime wages and minimum wages. Moreover, members of the Connecticut Class still employed by Defendants may be reluctant to raise individual claims for fear of retaliation.

73. Defendants have acted or refused to act on grounds generally applicable to the Connecticut Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class was a whole.

74. Plaintiffs' claims are typical of those of the class. Plaintiffs and the other class members were subjected to Defendants' policies, practices, programs, procedures, protocols and plans alleged herein concerning the non-payment of overtime wages, non-payment of minimum wages, and the failure to keep adequate records. The job duties of Plaintiffs are typical of those of the class members.

75. A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

76. The Connecticut Class Representatives intends to send notice to all members of the Connecticut Class to the extent required by Rule 23.

## COUNT I
## Overtime Wages Under The Fair Labor Standards Act

77. Plaintiffs re-allege and incorporate by reference all allegations in all preceding

paragraphs.

78.     Plaintiffs have consented in writing to be a party to this action, pursuant to 29 U.S.C. §216(b).

79.     At all times relevant to this action. Plaintiffs were engaged in commerce or the production of goods for commerce within the meaning of 29 U.S.C. §§206(a) and 207(a).

80.     At all times relevant to this action. Defendants were employers engaged in commerce or the production of goods for commerce within the meaning of 29 U.S.C. §§206(a) and 207(a).

81.     Defendants willfully failed to pay Plaintiffs overtime wages for hours worked in excess of forty (40) hours per week at a wage rate of one and a half (1.5) times the regular wage, to which Plaintiffs were entitled under 29 U.S.C. §§206(a) in violation of 29 U.S.C. §207(a)(l).

82.     Defendants' violations of the FLSA as described in this Complaint have been willful and intentional. Defendants have not made a good effort to comply with the FLSA with respect to the compensation of the Plaintiffs.

83.     Due to Defendants' FLSA violations, Plaintiffs are entitled to recover jfrom Defendants, jointly and severally, their unpaid wages and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to the FLSA, specifically 29 U.S.C. §216(b).

## COUNT II
## Minimum Wages Under the Fair Labor Standards Act

84.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

85.     Plaintiffs have consented in writing to be a party to this action, pursuant to 29 U.S.C. §216(b).

86.     At all times relevant to this action. Plaintiffs were engaged in commerce or the production of services and goods for commerce within the meaning of 29 U.S.C. §§206(a) and 207(a).

87.     At all times relevant to this action. Defendants were employers engaged in commerce or the production of goods for commerce within the meaning of 29 U.S.C. §§206(a) and 207(a).

88.     Defendants willfully failed to pay Plaintiffs a minimum wage in accordance with 29 U.S.C. §§201, et seq.

89.     Defendants' violations of the FLSA, as described in this Complaint have been willful and intentional.

90.     Defendants have not made a good faith effort to comply with the FLSA with respect to the Plaintiffs' compensation.

91.     Due to Defendants' FLSA violations. Plaintiffs are entitled to recover from Defendants, jointly and severally, his unpaid minimum wages and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action including interest, pursuant to the FLSA, specifically 29 U.S.C. §216(b).

## COUNT III
## Minimum Wages Under Connecticut Labor Law

92.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

93.     At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of the WHA but were misclassified as independent contractors.

94.     By misclassifying Plaintiffs as independent contractors when they were in fact employees under Connecticut law, in certain weeks where Plaintiffs were above a certain threshold of hours worked, their weekly pay amounted to less than the Connecticut Minimum Wage.

95.     In this way, Defendants violated the rights under the Connecticut Minimum Wage Act of Plaintiffs and all members of the class and, pursuant to Conn. Gen. Stat. Sec. 31-72, is liable to them for "twice the full amount of such wages, with costs and such reasonable attorney's fees as may be allowed by the court, ... "

96.     Due to Defendants' blatant, repeated, and ongoing Connecticut Minimum Wage Act violations, the Plaintiffs and the Class Members have endured significant economic damages.

## COUNT IV
## Overtime Wages Under Connecticut Labor Law

97.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

98.     At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of the WHA but were misclassified as independent contractors.

99.     At all times relevant herein, Defendants violated the WHA by failing to pay Plaintiffs their overtime wages for hours worked in excess of forty hours per week at a wage rate of one and a half (1.5) times their regular rate of pay.

100.    Due to Defendants' blatant, repeated, and ongoing Connecticut WHA violations, the Plaintiffs and the Class Members have endured significant economic damages.

## COUNT V
## Unjust Enrichment

101.    As set forth above, by misclassifying Plaintiffs and Class Members as independent contractors when they are employees under Connecticut law, Defendants were unjustly enriched or were conferred a benefit because they unlawfully withheld wages from the Plaintiffs and Class Members.

102.    Defendants conduct violated American public policy and the public policy of the State of Connecticut, including without limitation, the public policy that employers should not benefit from their misclassification of employees as independent contractors.

103.    Defendants were aware that they received a benefit from its misclassification of Plaintiffs, and it would be unjust to let Defendants keep the benefit of their savings in business costs and expenses.

104.    Defendants' conduct in misclassifying Plaintiffs and the class was done with malice in that it was done with conscious disregard for Plaintiffs' rights.

105.    Defendants knew that their classification of Plaintiffs' as independent contractors violated Connecticut's ABC independent contractor test, but went forward with it nonetheless, knowing that it would cause Plaintiffs significant harms and damages, as set forth above.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs respectfully request that judgment be granted:

A. Declaring Defendants' conduct complained herein to be in violation of the Plaintiffs' rights under the FLSA, the Connecticut WHA, and the Regulations of Connecticut State Agencies;

B. Awarding Plaintiffs unpaid overtime wages;

C. Awarding Plaintiffs unpaid minimum wages;

D. Awarding Plaintiffs reimbursement for any and all unlawful expenses;

E. Awarding Plaintiffs liquidated damages pursuant to the FLSA and the WHA;

F. Awarding Plaintiffs prejudgment and post-judgment interest;

G. Awarding Plaintiffs the costs of this action together with reasonable attomeys' fees;

H. Equitable Tolling of the Statute of Limitations;

H. Granting such other and further relief as this court deems necessary and proper.

## **JURY DEMAND**

NOW COME the Plaintiffs, by and through his attorney, and hereby request a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: June 19, 2020                                              Respectfully Submitted,


                                                 */s/ Donald Jeremiah Trella*
                                                 Donald Jeremiah Trella (ct30823)
                                                 Attorney for Plaintiffs
                                                 Grady & Riley, LLP
                                                 Phone: (203) 575-1131
                                                 Fax: (203) 754-1675
                                                 Email: dtrella@gradyriley.com